989 F.2d 668
 142 L.R.R.M. (BNA) 2870, 124 Lab.Cas. P 10,606
 LUKENS STEEL COMPANY, Appellee/Cross-Appellant,
v.
UNITED STEELWORKERS OF AMERICA (AFL-CIO); United
Steelworkers of America (AFL-CIO), Local Union No.
1165; Edward E. McDaniel,
United Steelworkers of America (AFL-CIO); United
Steelworkers of America (AFL-CIO), Local Union No.
1165, Appellants/Cross-Appellees.
 Nos. 92-1518, 92-1539.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 23, 1992.
Decided March 25, 1993.
 
 Rudolph L. Milasich, Jr. (argued), United Steelworkers of America, Pittsburgh, PA, for appellants/cross-appellees.
 Raymond A. Kresge (argued), Pepper, Hamilton & Scheetz, Philadelphia, PA, for appellee/cross-appellant.
 Before: COWEN, NYGAARD and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 This case involves the arbitrability of a dispute between Lukens Steel Company ("Lukens") and Local 1165 of the United Steelworkers of America ("Union") concerning the post-strike return to work of bargaining unit employees. The district court had jurisdiction over the action seeking a declaratory judgment as to arbitrability under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1988). We have jurisdiction over the appeal and cross-appeal under 28 U.S.C. § 1291 (1988).
 
 I. BACKGROUND
 
 2
 Lukens and the Union were parties to a collective bargaining agreement covering the period from August 20, 1988 through September 30, 1991 ("1988 Agreement"). When the 1988 Agreement expired, the bargaining unit employees went on strike. On January 5, 1992, the parties completed negotiation of a proposal to settle the strike. The terms of the proposed settlement were set forth in a Memorandum of Understanding. On January 13, 1992, the bargaining unit employees ratified this proposed settlement and it became the 1992 Agreement.
 
 
 3
 Thereafter, a dispute arose over the timing of the recall of employees. On January 23, 1992, Grievance No. 19515-9 ("Grievance") was filed alleging that Lukens "violated the current labor agreement, the week of 1/12/92, on all turns, when [it] failed to recall all seniority employees, and worked replacement and salary employees, when union members [were] available." The Union asked that Lukens be directed to "cease and desist in this practice [and] pay all wages and benefits, and all monetary losses...."
 
 
 4
 The 1992 Agreement contains a procedure for processing grievances which culminates in final and binding arbitration. The parties were unable to settle the Grievance during the lower steps of the grievance procedure and the Union then invoked this arbitration provision and selected Arbitrator Edward E. McDaniel ("McDaniel") to hear and decide the Grievance.[1]
 
 
 5
 In mid-March, the Union informed Lukens that the Grievance was scheduled to be heard on March 31, 1992. On March 27, 1992, Lukens filed this action seeking a judicial determination that the subject matter of the dispute was not arbitrable. Then, the day before the scheduled hearing, Lukens hand-delivered copies of a letter to McDaniel's home and office informing him of the pending action in the district court and saying that the arbitration hearing should not be held until after the district court determined whether the Grievance was arbitrable. The following day, before the hearing began, Lukens advised McDaniel both orally and in writing of its position that the arbitration should not proceed. Lukens declined a request by McDaniel that it participate in the hearing and then left the site where the hearing was to be held. McDaniel proceeded to conduct the hearing. After the Union presented its evidence, McDaniel closed the record without post-hearing briefs, but did not announce his decision.
 
 
 6
 Following the hearing, Lukens sought assurances from McDaniel that he would not issue his decision before the district court resolved the issue of arbitrability. When McDaniel declined to provide such assurances, Lukens amended its complaint to add him as a defendant in this action.
 
 
 7
 On April 13, 1992, the district court issued a temporary restraining order ("TRO") enjoining the arbitration proceeding and prohibiting McDaniel from issuing his award. The Union moved to vacate the TRO on the grounds that the Norris-LaGuardia Act, 29 U.S.C. §§ 101-115 (1988), deprived the district court of jurisdiction to issue such an injunction. The district court denied this motion as well as the Union's later motion for reconsideration.
 
 
 8
 A hearing on Lukens' motion for a preliminary injunction was held on April 22, 1992. At the hearing, over the Union's objection, Lukens presented testimony as to the parties' bargaining history. Lukens asserted that the bargaining history revealed that the dispute was not arbitrable. Ultimately, on April 23, 1992, the district court rendered a final judgment and decree in which the court concluded that the dispute was arbitrable. Nevertheless, the district court decided that Lukens' challenge to arbitrability was a good faith assertion of its rights under AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Therefore, to ensure "fairness," the district court: (1) "deemed" the arbitration before McDaniel "not effectual"; (2) ordered that a new arbitration be held; and (3) prohibited McDaniel from serving as arbitrator in this new arbitration.
 
 
 9
 The Union moved the district court for reconsideration and Lukens moved for relief from the judgment. The district court denied both motions. The Union then filed a timely appeal to this Court from the final order and the denial of its motion for reconsideration. Lukens filed a timely cross-appeal from the final order and the denial of its motion for relief. The Union then moved the district court for an order suspending the judgment pending this appeal. The district court denied that motion. Subsequently, the Union moved this Court to stay those portions of the final order which deemed the arbitration before McDaniel ineffectual and which prohibited him from serving as arbitrator in the new arbitration. Our court denied that motion.
 
 II. DISCUSSION
 A. Arbitrability of the Grievance
 
 10
 The district court determined that the Grievance was arbitrable. Whether or not a dispute is arbitrable depends upon "the intent of the parties regarding arbitration." John F. Harkins Co. v. Waldinger Corp., 796 F.2d 657, 660 (3d Cir.1986), cert. denied, 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987). "The proper standard of review has to be whether the district court's findings--interpretation of the contract, that is, the intent of the parties as to the meaning of the contract's language--are clearly erroneous." Id.; see Painewebber, Inc. v. Hartmann, 921 F.2d 507, 510 (3d Cir.1990). Thus, we address the issue of arbitrability under a clearly erroneous standard of review.
 
 
 11
 The Supreme Court has established certain principles for determining the arbitrability of a dispute involving a collective bargaining agreement. See AT & T Technologies, Inc. v. Communication Workers of Am., 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). First, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Id. (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). Second, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." Id. 475 U.S. at 649, 106 S.Ct. at 1418-19. Third, "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that, '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " Id. at 650, 106 S.Ct. at 1419 (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). Guided by these principles, we turn to the arbitrability of the Grievance.
 
 
 12
 As noted, the issue in this appeal is the arbitrability of a grievance concerning the method of recall of bargaining unit employees upon the conclusion of a strike. It is undisputed that the determination as to the arbitrability of this dispute was for the district court rather than an arbitrator. It is also agreed that, during all pertinent times, the following arbitration provision governed disputes between the parties:
 
 
 13
 Should any differences arise between the Company and the Union as to the meaning and application of, or compliance with, the provisions of this Agreement, there shall be no suspension of work on account of such differences, but such differences shall be settled promptly in accordance with the provisions of this Agreement and in the manner hereinafter set forth.[2]
 
 
 14
 On its face, the Grievance alleges violations of two articles in the collective bargaining agreement--Article 1 (Recognition) and Article 11 (Continuous Service and Seniority). In support of its position that the Grievance is arbitrable, the Union also relies upon Exhibit 41 to the Memorandum of Understanding which states: "The Company will discuss with the Union with respect to methods by which the hourly employees will return to work following the strike in accordance with the labor agreement."[3]
 
 
 15
 In view of the parties' arbitration provision, the presumption in favor of arbitrability applies. See AT & T, 475 U.S. at 650, 106 S.Ct. at 1419. To rebut this presumption, Lukens must either: (1) establish the existence of "an[ ] express provision excluding [the] grievance from arbitration"; or (2) provide "the most forceful evidence of a purpose to exclude the claim from arbitration." Id. (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-85, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960)); see United Steelworkers of Am., AFL-CIO v. Lukens Steel Co., Div. of Lukens, Inc., 969 F.2d 1468, 1475 (3d Cir.1992).
 
 
 16
 Lukens does not rely upon any express provision that would exclude this dispute from arbitration.[4] Accordingly, the district court was compelled to find the dispute arbitrable unless Lukens presented forceful evidence of the parties' intent to exclude the dispute from arbitration. We turn to an evaluation of the evidence presented by Lukens.
 
 
 17
 Lukens relies on the parties' bargaining history as evidence that the parties intended to exclude the subject of striker recall from arbitration. The district court admitted evidence of the bargaining history, but made no express findings regarding that evidence. We surmise at least two reasons why the district court may not have considered the bargaining history. First, if the 1992 Agreement "is explicit and unambiguous [regarding whether the Grievance is arbitrable]; there is no need to look to extrinsic evidence...." Local 13, Int'l Fed'n of Professional & Technical Eng'rs v. General Elec. Co., 531 F.2d 1178, 1183 n. 13 (3d Cir.1976).[5] Second, such evidence might be inadmissible because of the terms of the parties' collective bargaining agreement.[6] 6] Fortunately, in view of our ultimate determination, we need not, and do not, resolve these issues. Instead, for purposes of our analysis, we assume, without deciding, that the bargaining history would be admissible. In addition, because the district court made no findings on this evidence, we will consider it in the light most favorable to Lukens.
 
 
 18
 In the section of its brief devoted to the parties' bargaining history, Lukens, without a single record reference, makes several assertions. We will address only those assertions in Lukens' brief which would be significant, if valid. First, Lukens asserts that "the Union (by the testimony of bargaining committee member and Local Union President Haines) admitted that the subject of the timing of striker recall was not part of the collective bargaining agreement ratified by Union members on January 13, 1992 and thus is not part of the contract under which [the Grievance] is brought." (Lukens' Brief at 28). We have reviewed Mr. Haines' testimony and find that it does not support this broad assertion made by Lukens in its brief.[7] To the contrary, we note that the Settlement Agreement which was presented to the bargaining unit employees prior to the ratification vote contained, verbatim, the language in Exhibit 41 of the Memorandum of Understanding. See supra text accompanying note 3.
 
 
 19
 Second, in its brief, Lukens asserts that "the Union admitted that past practice on the timing of striker recall was not incorporated into the 1992 collective bargaining agreement and that the Union knew nothing about the timing of striker recall at the time of contract ratification." (Lukens' Brief at 28). Contrary to Lukens' assertion, however, the Local Union President testified repeatedly that the Union did know the timing of the recall of striking employees. (J.A. at 106 ("Prior to ratification? Oh, we had knowledge of timing, absolutely."); at 107 ("I told you before, I did know [about the timing of recall."]).
 
 
 20
 Third, Lukens asserts that "the undisputed bargaining history forcefully demonstrates that the subject of the timing of striker recall was discussed between Lukens and Union negotiators and was left outside of the contract to Lukens' unilateral determination...." (Lukens' Brief at 29). Contrary to Lukens' assertion, we have reviewed the entire record and conclude that the record only reveals what Lukens' representatives' believed Lukens' rights were with respect to the recall of employees. We are directed to no record evidence, and find none, that would lead us to conclude that Union representatives intended, agreed or acquiesced in any understanding that grievances over the timing of striker recall would not be arbitrable. We also note that, even if the parties agreed that Lukens had the right to set the timing of the recall, it would not necessarily follow that disputes over the timing of the recall were not arbitrable. See Hahnemann Univ. v. District 1199C, Nat'l Union of Hosp. & Health Care Employees, 765 F.2d 38, 42 (3d Cir.1985).
 
 
 21
 In sum, "this bargaining history would provide us with no indication of whether the parties' minds ever met on the issue of excluding [the dispute] from arbitration." E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Brotherhood of Teamsters, 812 F.2d 91, 97 (3d Cir.1987). Evidence which fails to establish that the parties' minds met on excluding the issue from arbitration is insufficient to rebut the presumption in favor or arbitrability. See United Steelworkers of Am., AFL-CIO v. Lukens Steel Co., Div. of Lukens, Inc., 969 F.2d 1468, 1478 (3d Cir.1992).
 
 
 22
 Lukens makes two other arguments that the dispute in this case is not arbitrable. First, Lukens relies on an earlier case wherein this Court was called upon to review a determination as to arbitrability made by an arbitrator, not by a court. See Pennsylvania Power Co. v. Local Union No. 272 of the Int'l Brotherhood of Elec. Workers, 886 F.2d 46 (1989). Because Pennsylvania Power involved a determination as to arbitrability made by an arbitrator, our review was limited to whether the arbitrator's determination drew its essence from the parties' collective bargaining agreement. Id. at 48. Consequently, we did not discuss or apply the presumption of arbitrability that is mandated when a court makes a determination as to arbitrability. See AT & T, 475 U.S. at 650, 106 S.Ct. at 1419. We also note that the language at issue in Pennsylvania Power, which required that the employer "discuss ... and negotiate," is significantly different than the language in this case which requires that Lukens "discuss ... the methods by which the hourly employees will return to work ... in accordance with the labor agreement." Pennsylvania Power, 886 F.2d at 48; J.A. at 289 (emphasis added). We conclude that Pennsylvania Power does not support Lukens' argument.
 
 
 23
 Second, Lukens relies upon a case from another circuit where the court remarked: "Controversies concerning recall to work after a strike are not prima facie, at any rate, grievances 'with respect to the interpretation or application' of any of the provisions of the usual collective bargaining agreement." Torrington Co. v. Metal Prods. Workers Union Local 1645, UAW-AFL-CIO, 347 F.2d 93, 95 (2d Cir.) (quoting from the grievance procedure in the agreement between the parties before that court), cert. denied, 382 U.S. 940, 86 S.Ct. 394, 15 L.Ed.2d 351 (1965). We note that Torrington did not involve any language such as that in Exhibit 41 of the Memorandum of Understanding. See supra text accompanying note 3. We conclude, therefore, that Torrington does not support Lukens' argument.
 
 
 24
 The evidence submitted by Lukens falls far short of the requisite "most forceful evidence of a purpose to exclude the claim from arbitration." AT & T, 475 U.S. at 650, 106 S.Ct. at 1419 (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-85, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960)). As we have recognized in our prior cases, "a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt." Painewebber, Inc. v. Hartmann, 921 F.2d 507, 513 (3d Cir.1990). We conclude that the district court's finding that the dispute was arbitrable is not clearly erroneous.[8] We turn to a review of the relief fashioned by the district court.
 
 
 25
 B. Jurisdiction of the District Court to Enjoin Arbitration
 
 
 26
 On its appeal, the Union argues that, under the Norris-LaGuardia Act ("NLA"), 29 U.S.C. §§ 101-115 (1988), the district court lacked jurisdiction to deem the proceedings before McDaniel ineffectual and to enjoin McDaniel from presiding over any new arbitration between the parties.[9] We employ a four-step analysis to determine whether the NLA divested the district court of such jurisdiction. First, we must ascertain whether this action involves a "labor dispute" as that term is used in the NLA. See 29 U.S.C. § 113(c). Second, we must decide whether the relief fashioned by the district court involves one or more injunctions as that term is used throughout the NLA. See id. §§ 101-115. Third, if we answer the first two questions affirmatively, we must then determine whether the district court complied with the procedural requirements of the NLA. See id. §§ 107-109. Fourth, if the district court did not comply with the NLA's procedural requirements, we must determine whether the dispute falls within a judicially-carved exception to the NLA.
 
 
 27
 1. Does This Case Involve a "Labor Dispute"
 
 
 28
 The NLA, by its terms, applies to any "labor dispute." Id. §§ 101, 107, 109. The NLA defines a "labor dispute" as including:
 
 
 29
 any controversy concerning terms or conditions of employment, or concerning the association or representation of persons negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.
 
 
 30
 Id. § 113(c). The Supreme Court has stated that a case involves a labor dispute if "the employer-employee relationship [is] the matrix of the controversy." Columbia River Packers Ass'n, Inc. v. Hinton, 315 U.S. 143, 147, 62 S.Ct. 520, 522, 86 L.Ed. 750 (1942); United Tel. Workers, AFL-CIO v. Western Union Corp., 771 F.2d 699, 704 (3d Cir.1985) (quoting Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n, 457 U.S. 702, 712-13, 102 S.Ct. 2672, 2680, 73 L.Ed.2d 327 (1982) (quoting Columbia River )). This interpretation of the term "labor dispute" furthers the "intentionally broad" scope of the NLA. United Telegraph, 771 F.2d at 704. We then ask whether an action by an employer to enjoin a union from proceeding to arbitration involves a labor dispute.
 
 
 31
 The Court of Appeals for the District of Columbia, in considering the precise question now before this Court, stated: "There is no doubt whatever that the instant action [to enjoin arbitration] involves or grows out of a 'labor dispute'.... [A]n injunction to block an arbitration under a collective bargaining agreement is fully subject to the strictures of the Norris-LaGuardia Act." In re District No. 1--PACIFIC Coast Dist., Marine Eng'rs' Beneficial Ass'n, 723 F.2d 70, 74 n. 2 (D.C.Cir.1983). Similarly, the Court of Appeals for the Ninth Circuit had "absolutely no doubt" that an application for an injunction to prevent the arbitration of a grievance involved a labor dispute. Camping Constr. Co. v. District Council of Iron Workers, 915 F.2d 1333, 1343 (9th Cir.1990), cert. denied, --- U.S. ----, ----, 111 S.Ct. 1684, 2260, 114 L.Ed.2d 79, 713 (1991). We agree that the broad definition of "labor dispute" compels such a result. This conclusion is also supported by the language of Section 8 of the NLA which provides that no injunction "shall be granted to any complainant ... who has failed to make every reasonable effort to settle [the] dispute ... by ... arbitration." 29 U.S.C. § 108.
 
 
 32
 In arguing that this case does not involve a labor dispute, Lukens relies on language originally appearing in a decision of the Court of Appeals for the Ninth Circuit.[10] This Court quoted that same language, inter alia, in concluding that an action to compel an employer to comply with a collective bargaining agreement did not involve a labor dispute. See International Union, UAW v. Mack Trucks, Inc., 820 F.2d 91, 97 (3d Cir.1987) (quoting Retail Clerks Union Local 1222, AFL-CIO v. Alfred M. Lewis, Inc., 327 F.2d 442, 446-48 (9th Cir.1964)).
 
 
 33
 We find Lukens' argument unpersuasive for several reasons. First, neither Mack Trucks nor Lewis involved an injunction barring arbitration. Second, the Court of Appeals for the Ninth Circuit, on whose language Lukens relies, has recently held that an action to enjoin arbitration does involve a labor dispute. See Camping Constr., 915 F.2d at 1343. Third, Lukens asks us to read our decision in Mack Trucks as providing that a labor dispute cannot exist unless one party is using its economic power to bring pressure on the other. We do not interpret Mack Trucks to provide for such a requirement. We note that Supreme Court precedent which pre-dated Mack Trucks rejected such a "narrowing construction" of the term "labor dispute." Burlington Northern R.R. Co. v. Brotherhood of Maintenance of Way Employees, 481 U.S. 429, 442, 107 S.Ct. 1841, 1849, 95 L.Ed.2d 381 (1987) ("[W]e have consistently declined to construe ["labor dispute"] narrowly. For example, we have interpreted ["labor dispute"] to embrace disputes 'having their genesis in political protests' as opposed to economic self-interest." (quoting Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n, 457 U.S. 702, 711, 102 S.Ct. 2672, 2679, 73 L.Ed.2d 327 (1982))).
 
 
 34
 Lukens also cites two district court opinions which held that the NLA does not prohibit the issuance of injunctions against arbitration. See Umeko, Inc. v. New York Coat, Suit, Dress, Rainwear & Allied Workers Union, 484 F.Supp. 210, 211 (S.D.N.Y.1980) (finding as an alternate basis for court's decision that NLA does not apply to order staying arbitration); ABC, Inc. v. American Fed'n of Television and Radio Artists, 412 F.Supp. 1077, 1082 (S.D.N.Y.1976) (finding NLA was not intended to curtail "use of injunctions against the improper invocation of the arbitration process"). We find the reasoning in these cases unpersuasive. In addition, a recent opinion of the court of appeals of that circuit calls into question the holdings in these cases. See Jou-Jou Designs, Inc. v. International Ladies Garment Workers Union, AFL-CIO, 643 F.2d 905, 911 (2nd Cir.1981) (applying NLA and finding that court was divested of jurisdiction to enjoin inter-union arbitration where employer could not demonstrate that arbitration would be "unlawful act").
 
 
 35
 2. Does The District Court's Final Judgment and Decree Involve One or More Injunctions
 
 
 36
 The district court's Final Judgment and Decree provides, inter alia: "Any proceedings which have already taken place before defendant Edward E. McDaniel are deemed not effectual and defendant McDaniel shall not preside over the [new] arbitration ordered ... above." We conclude that this portion of the district court's order contains two separate injunctions as that term is used in the NLA. See 29 U.S.C. § 101 (no federal court "shall have jurisdiction to issue any restraining order or temporary or permanent injunction...."). First, the district court deemed the earlier hearing before Arbitrator McDaniel "ineffectual." The practical effect of such an order is to permanently enjoin McDaniel from issuing an arbitration award. Second, the district court permanently enjoined McDaniel from serving as the arbitrator when any new hearing is held.
 
 
 37
 3. Did the District Court Comply With the NLA
 
 
 38
 The NLA divests courts of jurisdiction to issue any injunction in a case involving a labor dispute unless certain procedures are followed. In particular, Section 7 of the NLA divests courts of jurisdiction to order injunctions unless the court makes all of the following findings: 1) unlawful acts will be committed unless restrained; 2) substantial and irreparable injury will follow; 3) with respect to each item of relief, greater injury will be inflicted upon complainant by denying the relief than will be inflicted on defendant by granting the relief; 4) no adequate remedy exists at law; and 5) public officers charged with protecting complainant's property are unable to do so. 29 U.S.C. § 107. These findings are to be made after either: 1) a court hearing; or 2) receipt of sworn testimony. This Court has stated that Section 7:
 
 
 39
 reflects a broader goal of more current relevance [than prohibiting employers from halting labor strikes, that is] to prevent judicial interference in management-labor relations except in narrowly defined circumstances where strict procedures are followed.... Section 7 provisions clearly advance current labor policies when applied to any labor dispute.
 
 
 40
 United Tel. Workers, AFL-CIO v. Western Union Corp., 771 F.2d 699, 703-04 (3d Cir.1985).
 
 
 41
 Section 9 of the NLA provides that no injunction or restraining order shall be issued unless the district court makes prior findings of fact. 29 U.S.C. § 109. Section 9 also provides that the restraining order or injunction "shall include only a prohibition of such specific act or acts as may be expressly complained of in the ... complaint ... and as shall be expressly included in said findings of fact made and filed by the court...." Id. The district court failed to make the findings required by these sections prior to issuing its final order.
 
 This Court has recognized that:
 
 42
 Strict adherence to the Act's procedures is not a mere matter of form: A district court has no jurisdiction under the [NLA] to issue a labor injunction without adhering to the explicit terms of the Act.
 
 
 43
 United Telegraph, 771 F.2d at 704 (quoting PACIFIC Coast, 723 F.2d at 76-77). Thus, unless this case falls within a judicially-carved exception to the NLA, the district court lacked jurisdiction to deem the proceedings before McDaniel ineffectual and to enjoin McDaniel from presiding over any new arbitration between the parties.
 
 
 44
 4. Does This Case Fall Within an Exception to the NLA's General Divestiture of Jurisdiction
 
 
 45
 The Supreme Court has recognized two exceptions to the NLA's requirements: 1) those to accommodate the strong federal policy in favor of arbitration; and 2) those to reconcile the NLA with other federal statutes. Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n, Inc., 965 F.2d 1224, 1236 (2d Cir.1992). There is no other federal statute relied upon by Lukens in this case. Accordingly, the NLA divested the district court of jurisdiction to order any injunction unless that injunction fell within the exception accommodating the strong federal policy in favor of arbitration.
 
 
 46
 In considering and rejecting such a contention, the Court of Appeals for the District of Columbia Circuit stated: "The least that [Supreme Court precedents] require is that the parties to a collective bargaining agreement be allowed--indeed, required--to use their contractual grievance arbitration procedure without intervention by a court." PACIFIC Coast, 723 F.2d at 78. Similarly, the Court of Appeals for the Ninth Circuit found that injunctions barring arbitration would frustrate the federal policy in favor of arbitration by, inter alia, delaying dispute settlements. Camping Construction, 915 F.2d at 1345. Both the Court of Appeals for the District of Columbia and the Court of Appeals for the Ninth Circuit also found that such injunctions would be contrary to the NLA's Section 8 requirement that disputants make every effort to settle their disputes through, inter alia, arbitration before seeking injunctions. See 29 U.S.C. § 108 ("No restraining order or injunctive relief shall be granted to any complainant who has failed to ... make every reasonable effort to settle such dispute ... by negotiation ... mediation or voluntary arbitration."); see Camping Construction, 915 F.2d at 1346; PACIFIC Coast, 723 F.2d at 81 (granting injunctions where parties are refusing to arbitrate would be "utterly ironic and ridiculous").
 
 
 47
 Lukens argues that the Supreme Court's AT & T opinion mandates that any arbitration proceeding be enjoined until a determination as to arbitrability is made. See AT & T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). If such were the case, it might follow that an exception to the NLA would be required for that limited purpose. We therefore must consider the holding in AT & T.
 
 
 48
 A review of the decision in AT & T leads us to conclude that, in that case, the Supreme Court merely restated its long held position that arbitration will not be compelled by a federal court unless a prior determination as to arbitrability is made by the court (or unless the parties expressly provide that the determination as to arbitrability may be made by the arbitrator). See AT & T, 475 U.S. at 648, 106 S.Ct. at 1418 ("The principles necessary to decide this case are not new. They were set out by this Court over 25 years ago in a series of cases known as the Steelworkers Trilogy."). Our review of the AT & T decision reveals that the Supreme Court did not expand on its prior holdings and did not state or imply that an arbitration proceeding should be enjoined until a determination as to arbitrability is made.[11]
 
 
 49
 We conclude that this case involved a labor dispute and did not fall within any judicially-carved exception to the NLA. Accordingly, because the district court did not comply with the NLA, it lacked jurisdiction to deem the proceedings before McDaniel ineffectual and to enjoin McDaniel from presiding over any new arbitration between the parties.[12]
 
 C. The TRO
 
 50
 Finally, in its appeal the Union asks us to invalidate the TRO entered by the district court because it lacked jurisdiction to enter the order. Lukens asserts that we do not have jurisdiction to review that action of the district court since restraining orders are not appealable. The Union responds that the order may be reviewed here in conjunction with the appeal from the final judgment.
 
 
 51
 The restraining order has long since expired. Thus, a ruling on the Union's request can only serve the purpose of determining liability on the restraining order bond.
 
 
 52
 It is true that the district court, in denying a motion for reconsideration, ruled that it had jurisdiction to grant the restraining order. But at that point in the proceedings the district court did not have the benefit of this opinion and its possible impact on its ruling. In that circumstance, rather than addressing the jurisdictional issue, we think the district court should be afforded an opportunity to consider the correctness of its decision in a proceeding by the Union to impose liability on the bond. Furthermore, in such proceedings the surety will be on notice.
 
 
 53
 We therefore conclude, the jurisdictional issue apart, that the Union's attack on the issuance of the restraining order should be addressed in the first instance to the district court to permit it to be resolved in connection with any motion filed in this action by the Union to establish liability on the bond pursuant to Fed.R.Civ.P. 65.1.
 
 III. CONCLUSION
 
 54
 The order of the district court will be affirmed to the extent that it declares the Grievance arbitrable. The order of the district court will be reversed to the extent it deems the arbitration proceedings before McDaniel ineffectual, compels a new arbitration proceeding and bars McDaniel from presiding at any new proceeding.
 
 
 55
 COWEN, Circuit Judge, concurring in part, dissenting in part.
 
 
 56
 While I concur that the Union's grievance is arbitrable, I disagree that the district court's order deeming the ex parte arbitration before Arbitrator McDaniel "not effectual" violates the Norris-LaGuardia Act ("NLA"). Section 7 of the Norris-LaGuardia Act requires federal courts to follow certain procedures before issuing an injunction "in any case involving or growing out of a labor dispute." 29 U.S.C. § 107. I would hold that the suit by Lukens to enjoin the Union from arbitrating rather than litigating their grievance does not involve a "labor dispute" to which the NLA applies.
 
 
 57
 Section 4 of the NLA enumerates the kinds of labor activities that the Act was designed to protect. 29 U.S.C. § 104. Representative of these activities are "[b]ecoming or remaining a member of any labor organization" and "[a]ssembling peaceably to act or to organize to act." 29 U.S.C. § 104(b), (f). In International Union, UAW v. Mack Trucks, Inc., 820 F.2d 91, 97-98 (3d Cir.1987), we decided whether the district court could enjoin an employer from violating a collective bargaining agreement by unilaterally changing its employees health insurance. We held that the district court had jurisdiction to issue an injunction because the parties' dispute did not implicate the rights of association or self-organization that the NLA was designed to safeguard:
 
 
 58
 There is nothing in the complaint to suggest that either party here is using its economic powers in any way to bring pressure upon the other. Here, there is a mere disagreement as to the meaning and effect of certain terms of the contract. This we think, is not the type of "labor dispute" to which Norris-LaGuardia is directed.
 
 
 59
 Id. at 97 (quoting Retail Clerks Union Local 1222, AFL-CIO v. Alfred M. Lewis, Inc., 327 F.2d 442, 446-48 (9th Cir.1964)).
 
 
 60
 Like the dispute in Mack Trucks, a dispute over arbitrability "is a mere disagreement as to the meaning and effect of certain terms of the contract" and does not implicate any of the basic freedoms that the NLA seeks to protect. As one court has noted, "[i]t is clear that the intent of the draftsman of these statutes was to curtail the use of injunctions against concerted labor activity, not the use of injunctions against the improper invocation of the arbitration process." American Broadcasting Companies, Inc. v. American Federation of Television and Radio Artists, 412 F.Supp. 1077, 1082 (S.D.N.Y.1976); accord Umeko, Inc. v. New York Coat, Suit, Dress, Rainwear & Allied Workers Union, 484 F.Supp. 210, 211 (S.D.N.Y.1980).[1] Accordingly, I would conclude that the NLA does not apply to the district court's order in the present case.
 
 
 61
 In Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 457-59, 77 S.Ct. 912, 918-19, 1 L.Ed.2d 972 (1957), the Supreme Court held that the procedural requirements of section 7 of the NLA do not apply to a district court order compelling arbitration. In so holding, the Court determined that "[t]he failure to arbitrate was not a part and parcel of the abuses against which the Act was aimed." Lincoln Mills, 353 U.S. at 458, 77 S.Ct. at 918. The Court also concluded that the "congressional policy toward settlement of labor disputes by arbitration" justified excluding orders to compel arbitration from the requirements of the Act. Id. at 458-59, 77 S.Ct. at 918-19.
 
 
 62
 In the context of the NLA, there is no principled distinction between an action to compel arbitration and an action to enjoin arbitration. First, like a party's refusal to submit an arbitrable dispute to arbitration, see Lincoln Mills, 353 U.S. at 458, 77 S.Ct. at 918, a party's attempt to arbitrate an unarbitrable dispute is not "a part and parcel of the abuses against which the [NLA] was aimed." Second, if parties were powerless to stay or enjoin the arbitration of unarbitrable disputes, the potential for waste of time and money would make employers and unions alike more reluctant to enter into arbitration agreements in the first place. Thus, orders enjoining the arbitration of unarbitrable disputes, like orders compelling arbitration, are entirely consistent with the congressional policy favoring the peaceful resolution of labor disputes through arbitration.[2] Third, actions to compel and to enjoin arbitration involve the same basic issue: whether a conflict is arbitrable. Because the only significant difference between the two actions is the posture of the party initiating the suit, it would be anomalous to label one action and not the other a "labor dispute" under the NLA.
 
 
 63
 I also disagree with the majority opinion's application of the "clearly erroneous" standard of review to the district court's determination that the Union's grievance is arbitrable. While I agree that the grievance is arbitrable, I would hold that the determination as to the scope of the arbitration agreement is subject to plenary review. See Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 121 (2d Cir.1991).
 
 
 64
 Quoting John F. Harkins Co. v. Waldinger Corp., 796 F.2d 657, 660 (3d Cir.1986), cert. denied, 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987), the majority opinion characterizes the issue of arbitrability as a factual question that turns on "the intent of the parties regarding arbitration." At 673. The majority, however, quotes Harkins out of context. In Harkins, we were faced with determining which of two distinct arbitration clauses contained in two separate agreements applied to the parties' dispute. We thus sought to ascertain "the intent of the parties as to what arbitration clause controlled." We did not state that the scope of either clause turned on the parties' intent.
 
 
 65
 The majority opinion's reliance on Painewebber, Inc. v. Hartmann, 921 F.2d 507 (3d Cir.1990),[3] is similarly misplaced. In Painewebber, we applied the clearly erroneous standard to the district court's findings of intent, but also stated that "we must look to the federal Arbitration Act ... and the case law that has evolved thereunder, in reviewing the propriety of the district court's order." Id. at 510. Furthermore, the issue in Painewebber was not whether the underlying dispute was within the scope of the arbitration clause, but whether the expiration of a limitations period imposed under the arbitration agreement was a substantive bar to arbitration or an affirmative defense for the arbitrator to consider. Id.
 
 
 66
 To the extent that a proper analysis of the issue of arbitrability requires us to consider the parties' intent, I agree that we are bound by well-settled principles to adopt the district court's relevant factual findings unless clearly erroneous. See Matter of Barclay Industries, Inc., 736 F.2d 75, 78 (3d Cir.1984). As the majority opinion itself illustrates, however, the question of intent is merely one factual component of an overarching analysis that determines whether a collective bargaining agreement gives rise to a legal duty to arbitrate. See at 672. In E.M. Diagnostic Sys., Inc. v. Local 169, International Bhd. of Teamsters, 812 F.2d 91, 95 (3d Cir.1987), we acknowledged the operation of a legal "presumption of arbitrability" and further interpreted the Supreme Court's decision in AT & T as directing a court's analysis to three distinct questions: (1) whether the dispute fits within the general scope of the arbitration clause; (2) whether any other provision in the agreement expressly excludes the dispute from arbitration; and (3) whether there is any other "forceful evidence" indicating the parties' intent to exclude the claim. As a whole, this inquiry presents mixed questions of law and fact. Because a court must interpret and apply legal precepts, and not merely make factual findings with respect to intent, a determination as to arbitrability should be subject to plenary review. See Ram Construction Co. v. American States Ins. Co., 749 F.2d 1049, 1052-53 (3d Cir.1984).
 
 
 
 [1]
 Although the parties' arbitrator selection procedure appears to be somewhat unusual, Lukens does not contest that, assuming the Grievance were arbitrable, the Union was entitled unilaterally to select the arbitrator to hear the dispute from a previously agreed upon list of arbitrators
 
 
 [2]
 This provision appeared in Article VII, Section 1(B) of the 1988 Agreement. It was continued in the 1992 Agreement
 
 
 [3]
 The cover page of the Memorandum of Understanding states: "The understanding set forth in the attached exhibits ... shall be deemed part of the new collective bargaining agreement, whether or not incorporated therein."
 
 
 [4]
 We note that the parties' agreement does expressly exclude certain disputes from arbitration. See Article VI, Section 7 of 1992 Agreement. "This indicates that the parties knew how to remove issues from arbitration when they wanted to." Eichleay Corp. v. International Ass'n of Bridge, Structural & Ornamental Iron Workers, 944 F.2d 1047, 1058 (3d Cir.1991), cert. dismissed, --- U.S. ----, 112 S.Ct. 1285, 117 L.Ed.2d 510 (1992)
 
 
 [5]
 The district court judge was speaking about this principle when he said to Lukens' counsel:
 I'm not sure that the negotiating history is relevant.... Because it seems to me it's relevant if I find that the issue is ambiguous on the contract. If I find the contract language gives me enough to decide the issue yay [sic] or nay, I don't need testimony about the negotiations.
 (J.A. at 53).
 
 
 [6]
 Appendix B of the 1988 Agreement stated:
 
 
 [3]
 The proposals made by each party with respect to changes in the basic labor agreements and the discussions had with respect thereto shall not be used, or referred to, in any way during or in connection with the arbitration of any grievance arising under the provisions of the basic labor agreement
 It is undisputed that this provision was continued in the 1992 Agreement. Lukens argues that this provision is inapplicable because the bargaining history was not a proposal made "with respect to changes in the basic labor agreements."
 
 
 [7]
 In an earlier section of its brief, Lukens cites to the following testimony of Haines in support of a similar assertion:
 Q. Then isn't it true at the time of the ratification vote on the Collective Bargaining Agreement, which is in issue today, that none of the rank and file knew therefore [sic] could not have voted on this timing, this specific timing for the return to work of either themselves personally or anybody else in the bargaining unit.
 A. But that was not on the timing. The vote was on the ratification to accept or reject.
 (Lukens' Brief at 10 (citing J.A. at 108)). We reject any contention that this muddled question and answer support Lukens' assertion.
 
 
 [8]
 The parties have proposed that our standard of review on the issue of arbitrability is plenary. (Lukens' Brief at 15, Union's Brief at 11-12). Although we have held otherwise, we note that our result would be the same under that standard
 
 
 [9]
 Section 1 of the NLA states:
 No court of the United States ... shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.
 29 U.S.C. § 101.
 
 
 [10]
 Lukens relies upon the following language:
 There is nothing in the complaint to suggest that either party is here using its economic powers in any way to bring pressure upon the other. Here, there is a mere disagreement as to the meaning and effect of certain terms of the contract. This we think, is not the type of "labor dispute" to which Norris-LaGuardia is directed.
 Retail Clerks Union Local 1222, AFL-CIO v. Alfred M. Lewis, Inc., 327 F.2d 442, 448 (9th Cir.1964).
 
 
 [11]
 We note that to preserve an objection to arbitrability, a party need only state his or her objection on the record at the arbitration. The party may then proceed with the arbitration and raise the objection at a later date in an enforcement proceeding. See Pennsylvania Power, 886 F.2d at 50 ("Where a party objects to the arbitrability of an issue but nonetheless voluntarily submits the arbitrability issue to arbitration, waiver will not be inferred.")
 
 
 [12]
 We do not believe that our decision conflicts with this Court's decision in Trap Rock Industries, Inc. v. Local 825, International Union of Operating Engineers, 982 F.2d 884 (3d Cir.1992). We recognize that the employer in Trap Rock sought "an order enjoining the Union from submitting the ... dispute to arbitration." Id. at 886. However, we read our decision as only granting a declaratory judgment that the dispute was not arbitrable. Id. at 892
 
 
 [1]
 I recognize, as does the majority opinion, that ABC and Umeko have been implicitly called into question by Jou-Jou Designs, Inc. v. International Ladies Garment Workers Union, AFL-CIO, 643 F.2d 905, 911 (2nd Cir.1981). However, I do not find the arguments set forth in Jou-Jou Designs or the other similarly-decided cases cited by the majority opinion persuasive
 
 
 [2]
 While consistent with the national policy favoring arbitration, such injunctions also give maximum effect to important countervailing principles. These are: (1) that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)); and (2) that the question of arbitrability "is undeniably an issue for judicial determination." Id. 475 U.S. at 649, 106 S.Ct. at 1418
 
 
 [3]
 See at 672