[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 04-13234

_____

D.C. Docket No. 04-01300 CV-WBH-1

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 14, 2005
THOMAS K. KAHN
CLERK

TRIANGLE CONSTRUCTION &
MAINTENANCE CORP.,

Plaintiff-Appellee,

versus

OUR VIRGIN ISLANDS LABOR UNION,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(September 14, 2005)**

Before ANDERSON, HULL and RONEY, Circuit Judges.

ANDERSON, Circuit Judge:

Our Virgin Islands Labor Union ("OVILU") is a labor union that represents

employees in the Virgin Islands, including employees of Triangle Construction and

Maintenance Corporation ("Triangle"). Triangle and OVILU have entered into a

collective bargaining agreement ("CBA").  The union initiated arbitration proceedings with the American Arbitration Association ("AAA") regarding what it considered to be violations of the CBA/Unfair Labor Practices.  Triangle filed for an injunction in the Northern District of Georgia enjoining arbitration of the dispute.  The district court granted the injunction and OVILU appeals.

We vacate the judgment of the district court because it lacked jurisdiction to enjoin the arbitration.  This case is one "involving or growing out of a labor dispute" and is thus covered by the Norris-LaGuardia Act (29 U.S.C. § 101 et seq) ("the Act"), which strips the federal courts of jurisdiction to issue temporary or permanent injunctions in almost all cases to which it applies.  The case does not fall within any of the limited judicial exceptions to the Act's coverage, nor is there jurisdiction under the provisions of the Act outlining the extraordinary circumstances under which a court may issue injunctive relief in a case within the Act's scope.  We join the five other Circuits which have examined the issue, each of which has found that a district court does not have jurisdiction to enjoin arbitration of labor disputes.[1]  In light of our resolution of the case, we do not reach

---

[1]    AT&T Broadband, LLC, et. al. v. International Brotherhood of Electrical Workers, 317 F.3d 758 (7th Cir. 2003) ("Broadband"); Tejidos de Coamo v. Int'l Ladies Garment Workers Union, 22 F.3d 8 (1st Cir. 1994); Lukens Steel Co. v. United Steelworkers of America, 989 F.2d 668 (3d Cir. 1993); Camping Construction Co. v. District Council of Iron Workers, 915 F.2d 1333 (9th Cir. 1990); In re District No. 1 – Pacific Coast District, Marine Engineers' Beneficial Association (AFL-CIO), 723 F.2d 70 (D.C. Cir. 1983).

the issue of whether the court had personal jurisdiction over the parties.

## I.  BACKGROUND

Both OVILU and Triangle are incorporated in the Virgin Islands.  The parties entered into a CBA in March 2002 and it is undisputed that the CBA was in effect at all relevant times.  The instant case grew out of the following events:  on March 5, 2002, OVILU filed a written grievance with Triangle alleging violations of the CBA's seniority-based lay-off provisions.  On August 18, 2002, OVILU filed an Unfair Labor Practice complaint ("ULP") with the National Labor Relations Board ("NLRB") regarding same.  For roughly a week, starting on September 12, 2002, OVILU's members were not permitted to work.  The company claims that its insurance lapsed and that it was forced to shut down operations until it could activate another policy.  OVILU claims that the company's actions constituted a lockout in violation of the CBA as well as an unfair labor practice.  OVILU filed a grievance under the CBA regarding the alleged lockout and amended its ULP charge to include the lockout allegation.  Triangle denied the CBA grievance and subsequently notified OVILU that the union had not timely appealed the denial and that the company therefore viewed the grievance as withdrawn. Both parties then notified the NLRB that they were willing to arbitrate the ULP charges, including the lockout allegation.  Triangle's notification, a letter

dated November 15, 2002, stated that its offer to arbitrate was open "for a reasonable time after the administrative deferral of the charge." On November 22, 2002, the NLRB Regional Director issued a deferral letter giving the parties the opportunity to arbitrate. The letter noted that OVILU had the "affirmative obligation to file a grievance [for arbitration], if a grievance has not already been filed." The Regional Director warned that "[i]f the Charging Party fails either to promptly file or submit the grievance to the grievance/arbitration process, or declines to have the grievance arbitrated if it is not resolved, I will dismiss the charge."

In subsequent negotiations, the parties appear to have resolved all their disputes with the exception of the dispute regarding the alleged lockout, but were unable to agree upon an arbitrator for resolution of that issue. On November 14, 2003, the company wrote the NLRB and requested that it dismiss the ULP charge based on OVILU's failure to promptly submit the matter to arbitration. On November 21, 2003, OVILU filed a demand for arbitration with AAA. On December 12, 2003, Triangle contacted the NLRB and formally withdrew its November 15, 2002 letter agreeing to arbitration. On the same day, Triangle wrote the AAA, warning that it would seek injunctive relief if the AAA moved forward with the arbitration.

4

On December 19, 2003, the NLRB Regional Director dismissed OVILU's Unfair Labor Practice claim, noting that the union had been "specifically advised . . . of my intention to dismiss the charge if you failed to submit the dispute to arbitration, [yet] failed to do so." OVILU appealed to the NLRB's General Counsel, and was denied. The NLRB also denied OVILU's motion for reconsideration. Triangle notified the AAA regarding the NLRB's dismissal. The AAA responded that its policy is to move forward with arbitration until it is enjoined from doing so, and set May 28, 2004, as the date for the arbitration hearing, which was to take place in St. Croix, Virgin Islands. After the first arbitration was scheduled, OVILU filed a second arbitration demand with the AAA.[2]

On May 11, 2004, seventeen days before the first scheduled arbitration hearing, Triangle filed in the Northern District of Georgia for a preliminary injunction, asking the court to enjoin all arbitration proceedings. The district court held a hearing on the preliminary injunction motion two days before the first arbitration was scheduled to occur. OVILU did not appear, instead filing a

---

[2]     The passages from correspondence between OVILU, Triangle and the NLRB quoted above are from documents that have not been included in the record on appeal. We quote from the briefs. The wording of these letters is uncontested by the parties and is not essential to our disposition of this case.

responsive letter signed by OVILU's president, Terrence Nelson, a layperson. That

same day, the district court granted the injunction, holding that "it appears to the

Court that Defendants are about to engage in conduct that would require Triangle

to participate in an arbitration proceeding to which it has not agreed, and that

Triangle would be immediately and irreparably harmed by that action." Order at 2.

OVILU appeals.

## II. DISCUSSION

Generally, the federal courts have jurisdiction over "[s]uits for violation of

contracts between an employer and a labor organization representing employees in

an industry affecting commerce . . . " under § 301(a) of the Labor-Management

Relations Act, 29 U.S.C. § 185(a). The Norris-LaGuardia Act, responding to what

Congress perceived as a history of pro-employer judicial interference in labor

disputes, was designed to sharply limit the federal judiciary's use of injunctions in

cases involving labor disputes.[3] We begin with a review of the six interlocking

---

[3] See, e.g., Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970):

> The Norris-LaGuardia Act was responsive to a situation totally different from that which exists today. In the early part of this century, the federal courts generally were regarded as allies of management in its attempt to prevent the organization and strengthening of labor unions; and in this industrial struggle the injunction became a potent weapon that was wielded against the activities of labor groups. The result was a large number of sweeping decrees, often issued ex parte, drawn on an ad hoc basis without regard to any systematic elaboration of national labor

6

provisions relevant to determining subject matter jurisdiction under the Norris-

LaGuardia Act.

Section 1 is the Act's central jurisdiction-stripping provision:

> No court of the United States . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter;  nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

29 U.S.C. § 101.

Section 13(c) defines "labor dispute":

> The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment,

---

policy.

In 1932 Congress attempted to bring some order out of the industrial chaos that had developed and to correct the abuses that had resulted from the interjection of the federal judiciary into union-management disputes on the behalf of management.

Id. at 398 U.S. at 250, 90 S.Ct. At 1592; Brotherhood of R.R. Trainmen, Enter. Lodge, No. 27, v. Toledo, P. & W.R.R. No. 28, 321 U.S. 50, 58, 64 S.Ct. 413, 419, 88 L.Ed. 534 (1944) (explaining that although the Norris-LaGuardia Act "did not entirely abolish judicial power to impose previous restraint in labor controversies . . . its prime purpose was to restrict the federal equity power in such matters within greatly narrower limits than it had come to occupy."); Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Ass'n., 457 U.S. 702, 708, 102 S.Ct. 2672, 2678, 73 L.Ed.2d 327 (1982) ("Congress adopted this broad prohibition to remedy the growing tendency of federal courts to enjoin strikes by narrowly construing the Clayton Act's labor exemption from the Sherman Act's prohibition against conspiracies to restrain trade . . . .").

regardless of whether or not the disputants stand in the proximate relation of employer and employee.

29 U.S.C. § 113(c).[4]

Section 4 explicitly lists situations in which the court does not have jurisdiction:

> No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:
>
> > **(a)** Ceasing or refusing to perform any work or to remain in any relation of employment;
> >
> > **(b)** Becoming or remaining a member of any labor organization or of any employer organization, regardless of any such undertaking or promise as is described in section 103 of this title;

---

[4]      See also Section 13(a):

(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a "labor dispute" (as defined in this section) of "persons participating or interested" therein (as defined in this section).

29 U.S.C. § 113(a).

**(c)** Paying or giving to, or withholding from, any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value;

**(d)** By all lawful means aiding any person participating or interested in any labor dispute who is being proceeded against in, or is prosecuting, any action or suit in any court of the United States or of any State;

**(e)** Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;

**(f)** Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute;

**(g)** Advising or notifying any person of an intention to do any of the acts heretofore specified;

**(h)** Agreeing with other persons to do or not to do any of the acts heretofore specified; and

**(i)** Advising, urging, or otherwise causing or inducing without fraud or violence the acts heretofore specified, regardless of any such undertaking or promise as is described in section 103 of this title.

29 U.S.C. § 104.

Section 7 defines the exceptional circumstances under which a court has subject matter jurisdiction to order injunctive relief in a dispute that falls within the scope of the Act:

No court of the United States shall have jurisdiction to issue a

temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in this chapter, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect--

> **(a)** That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;

> **(b)** That substantial and irreparable injury to complainant's property will follow;

> **(c)** That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

> **(d)** That complainant has no adequate remedy at law; and

> **(e)** That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

29 U.S.C. § 107 (emphasis added).

Section 8 imposes an additional condition on a court's ability to grant injunctive relief, even where all other conditions are met.

> No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed

by law which is involved in the labor dispute in question, <u>or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration</u>.

29 U.S.C. § 108 (emphasis added).

Finally, the district court must meet the requirement of Section 9, which states:

No restraining order or temporary or permanent injunction shall be granted in a case involving or growing out of a labor dispute, except on the basis of findings of fact made and filed by the court in the record of the case prior to the issuance of such restraining order or injunction; and every restraining order or injunction granted in a case involving or growing out of a labor dispute shall include only a prohibition of such specific act or acts as may be expressly complained of in the bill of complaint or petition filed in such case and as shall be expressly included in said findings of fact made and filed by the court as provided in this chapter.

29 U.S.C. § 109.

In determining whether or not the Act strips a federal court of jurisdiction to issue an injunction, we are persuaded that the best approach is the four-step analysis set out in <u>Lukens Steel Co. v. United Steelworkers of America</u>, 989 F.2d 668, 675-76 (3d Cir. 1993), and adopted here with only minor alterations. The first step is to determine whether or not the action is one "involving or growing out of a labor dispute." 29 U.S.C. § 101. "Second, we must decide whether the relief fashioned by the district court involves one or more injunctions as that term is used

11

throughout the [Norris-Guardia Act]." Lukens, 989 F.2d at 676 (3d Cir.). Third, if we answer these first two questions affirmatively, we must then determine whether or not the case qualifies for a statutory exception. In making this inquiry, we determine whether the court followed the procedures and made the findings required by Sections 107, 108 and 109. As part of this inquiry, the court must find, *inter alia*, "[t]hat substantial and irreparable injury to complainant's property will follow" if no injunctive relief is granted (29 U.S.C. § 107(b)), and that the complainant made "every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration." 29 U.S.C. § 108. If the requirements of Sections 107, 108 and 109 have been met, the case is one in which injunctive relief was correctly granted due to the existence of a statutory exception. If the case does not qualify under an exception found within the statute itself, we move to the fourth and final inquiry; namely, whether the case qualifies under the three narrow judicial exceptions to the Act's jurisdiction stripping provisions. First, "it has long been settled that federal courts have jurisdiction, in spite of the Norris-LaGuardia Act, to compel a recalcitrant employer to honor its agreement to arbitrate." Camping Construction Co. v. District Council of Iron Workers, 915 F.2d 1333, 1343 (9th Cir. 1990) (citing Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 457-59,

12

77 S.Ct. 912, 918-19, 1 L.Ed.2d 972 (1957)).  Second, "when a union refuses to honor its contractual commitment to arbitrate and instead calls a strike, a federal court may grant a prohibitory injunction against the strike, as long as the dispute underlying the strike is arbitrable."  Camping, 915 F.2d at 1343 (9th Cir.) (citing Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 253-54, 90 S.Ct. 1583, 1594, 26 L.Ed.2d 199 (1970) and Buffalo Forge Co. v. United Steelworkers, 428 U.S. 397, 407-12, 96 S.Ct. 3141, 3147-50, 49 L.Ed.2d 1022 (1976)).  Third, the "Norris-LaGuardia [Act] does not prevent courts from issuing injunctions to enforce positive duties imposed by other federal labor statutes."  Camping, 915 F.2d at 1344 (citing Brotherhood of R.R. Trainmen v. Chicago River & Ind. Ry., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957)).[5]

In conducting the inquiry described above, we must be mindful that the Supreme Court's jurisprudence has consistently emphasized both the broadness of the phrase "involving or growing out of a labor dispute" (29 U.S.C. § 101) and the

---

[5]     In Lukens, the Second Circuit expressed the same framework of judicial exceptions, but collapsed the first two categories:  "The Supreme Court has recognized two exceptions to the [Norris-LaGuardia Act's] requirements:  1) those to accommodate the strong federal policy in favor of arbitration; and 2) those to reconcile the [Act] with other federal statutes."  989 F.2d at 678 (3d Cir.).

13

strong federal policy in favor of labor arbitration.[6]  Having laid out the framework

for our analysis, we now proceed to apply it to the facts of the instant case.

First Step:  Does The Action Involve Or Grow Out Of A Labor Dispute?

The first issue we must address is whether or not this action is one

"involving or growing out of a labor dispute."  29 U.S.C. § 101.  Triangle offers

three arguments as to why it does not.  First, Triangle argues that by failing to

follow the procedure outlined in the CBA, OVILU waived its right to proceed with

arbitration.  According to Triangle, this waiver was "contractual" and "procedural"

in nature, not a matter growing out of the underlying dispute.  Second, Triangle

argues that the dispute is not covered by the Act because it is not explicitly

---

[6]  In Jacksonville Bulk Terminals, the Supreme Court stated that "this Court has consistently given the anti-injunction provisions of the Norris-LaGuardia Act a broad interpretation, recognizing exceptions only in limited situations where necessary to accommodate the Act to specific federal legislation or paramount congressional policy."  457 U.S. at 708; 102 S.Ct. 2678.  According to the Court, "[t]he critical element in determining whether the provisions of the Norris-LaGuardia Act apply is whether 'the employer-employee relationship [is] the matrix of the controversy."  Id., 457 U.S. at 712, 102 S.Ct. at 2680 (quoting Columbia River Packers Assn., Inc. v. Hinton, 315 U.S. 143, 147, 62 S.Ct. 520, 522, 86 L.Ed. 750 (1942)); see also, Burlington Northern R.R. Co. v.Brotherhood of Maintenance of Way Employees, 481 U.S. 429, 441, 107 S.Ct. 1841, 1849, 95 L.Ed.2d 381 (1987) ("We reject these narrow constructions of § 13(c) for several reasons.  First, we have long recognized that 'Congress made the definition [of "labor dispute"] broad because it wanted it to be broad . . .Congress attempted to write its bill in unmistakable language because it believed previous measures looking toward the same policy against nonjudicial intervention in labor disputes had been given unduly limited constructions by the Courts.'") (citations omitted); Gateway Coal Co. v. United Mine Workers of America, 414 U.S. 368, 377, 94 S.Ct. 629, 637(1974) ("The federal policy favoring arbitration of labor disputes is firmly grounded in congressional command.") (citing Section 203(d) of the Labor Management Relations Act, 29 U.S.C. § 173(d)); Camping, 915 F.2d at 1342 (9th Cir.) (stating that the Act's definition of the term labor dispute "is extraordinarily broad, and the Supreme Court has so interpreted it.");  District No. 1, 723 F.2d at 77 (D.C. Cir.); Lukens, 989 F.2d at 676 (3d Cir.).

14

described in Section 4. Third, Triangle argues that the instant case is not a labor dispute, but rather an unfair labor practice claim. We reject each of these arguments.

At the outset, we note that the company's brief expressly acknowledges that the underlying dispute at issue here originated with a grievance filed by the union claiming that the company had violated the seniority-based layoff provisions of the CBA, and a grievance claiming that the September 2002 work suspension was a "lockout" which violated the CBA. In addition, the company's arguments are inconsistent with the breadth of the statutory definition of labor dispute and the consistent refusal of the Supreme Court to narrow it. Triangle's attempt to characterize the dispute as "procedural" or "contractual" cannot obscure the fact that the case is one "involving or growing out of" (29 U.S.C. § 101) a "controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment . . . ." 29 U.S.C. § 113(c). See AT&T Broadband, LLC, et. al. v. International Brotherhood of Electrical Workers, 317 F.3d 758, 760 (7th Cir. 2003) ("Broadband") ("That the arbitration is not itself a 'labor dispute' does not make this suit less one 'growing out of' a labor dispute.").

15

Triangle's second argument, that Section 4 constitutes an exhaustive list of the types of disputes covered by the Act (an attempted end-run around the well established breadth of Section 1) is also unpersuasive, especially in light of the history that lead to the Act's passage. As the Seventh Circuit noted in AT&T Broadband:

> Section 4, for its part, contains a list of particular things that courts are not to enjoin. . . . Once again arbitration is not on the list. Once again the omission is unimportant. Section 4 does not say that the prohibition of § 1 is *limited* to the sorts of activities mentioned in § 4. It is designed, rather, to shout "We really mean it!" for activities at the core of union operations. The whole Norris-LaGuardia Act is a response to judicial evasion of § 20 in the Clayton Act, 29 U.S.C. § 52, which had been designed to end the labor injunction. Section 4 of the Norris-LaGuardia Act ensured that the new statute would not suffer the same fate. It would be ironic if the enactment of § 4 to make doubly sure that judges keep their noses out of labor disputes were used to evade the broader scope of § 1.

Id. at 760-61 (citations omitted) (emphasis in original); accord Camping, 915 F.2d 1333 (9th Cir.); see also Tejidos de Coamo v. Int'l Ladies Garment Workers Union, 22 F.3d 8, 14 (1st Cir. 1994).

Similarly, in In re District No. 1 – Pacific Coast District, Marine Engineers' Beneficial Association (AFL-CIO), 723 F.2d 70 (D.C. Cir. 1983), the D.C. Circuit wrote:

> It would be utterly ironic and ridiculous for us to hold, in the face of the explicit jurisdictional and public policy provisions of § 1, the

16

> specific requirement in § 8 compelling resort to arbitration as a prerequisite to any injunctive relief, and the undisputed fact that this case arises out of a labor dispute, that an injunction should nevertheless issue because injunctions against arbitration are not listed in § 4.  Such a conclusion would effectively destroy substantial and important provisions of the Norris-LaGuardia Act.

Id. at 81; see also id. at 74 n.2.

We agree with the reasoning of our sister circuits, and hold that the list of specific situations in which injunctions are prohibited is not an exclusive list.

We also reject Triangle's third and final argument in support of its position that this case falls outside the scope of Section 1.  The mere fact that arbitration is arguably taking place in conjunction with or parallel to an Unfair Labor Practice proceeding does not deprive the instant case of its status as "a case involving or growing out of a labor dispute" under 29 U.S.C. § 101.  "The Norris-LaGuardia Act is made applicable by virtue of the existence of a *labor dispute*, not the existence of an arbitrable dispute or, indeed, even of a collective-bargaining agreement."  Camping, 915 F.2d at 1347 (9th Cir.); accord Broadband, 317 F.3d at 760 (7th Cir.).

Second Step:  Does The Relief Sought Involve An Injunction?

It is undisputed that the district judge's order in this case was an injunction as that term is used in the Act.

17

Third Step:  Statutory Exceptions

As noted above, Section 7 sets out the narrow and exceptional circumstances under which a federal court has subject matter jurisdiction to enjoin arbitration of a case involving or growing out of a labor dispute.  One of the prerequisites to such injunctive relief is a finding of fact by the district court to the effect "[t]hat substantial and irreparable injury to complainant's property will follow."  29 U.S.C. § 107(b).[7]  The district court's discussion of irreparable harm is limited to one conclusory sentence:  "[I]t appears to the Court that Defendants are about to engage in conduct that would require Triangle to participate in an arbitration proceeding to which it has not agreed, and that Triangle would be immediately and irreparably harmed by that action."  Order at 2.

Triangle concedes on appeal that the expense of participating in an arbitration proceeding would not constitute irreparable injury.  We agree.  See Klay v. United Health Group, Inc., 376 F.3d 1092, 1112 n.20 (stating in dicta that the time and expense incurred in participating in arbitration proceedings do not constitute irreparable injury); accord Broadband, 317 F.3d at 762 (7th Cir.) (holding that the Norris-LaGuardia Act precludes injunctive relief against

_____

[7]        Although it appears highly unlikely that the district court made the other necessary findings required by § 7 (or could have made same), our holding with respect to irreparable injury makes it unnecessary for us to address the other prerequisites.

18

arbitration of a labor dispute, and expressly holding that conduct of the arbitration proceedings does not constitute irreparable injury); Tejidos, 22 F.3d at 14-15 (1st Cir.) (same); Camping, 915 F.2d at 1349 (9th Cir.) (same); District No. 1, 723, F.2d at 78 (D.C. Cir.) (same).[8]

Although conceding that the time and expense incurred in participating in the arbitration proceedings would not constitute irreparable injury, Triangle's brief, in a vague single sentence, suggests that there would be irreparable injury because a failure to enjoin the arbitration would deny Triangle the right to have the NLRB issue the final decision with respect to the underlying allegations. Although Triangle does not use the term collateral estoppel or res judicata, to the extent Triangle is arguing such estoppel, the argument is foreclosed by Klay, 376 F.3d at 1109, which held that "res judicata was for the arbitrator to decide in the first instance."[9]

The district court erroneously concluded that Triangle would be irreparably harmed. Thus, Triangle does not fall within the statutory exceptions.

---

[8] See also FTC v. Standard Oil Co., 449 U.S. 232, 244, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980) (finding that the "substantial" expense of an administrative proceeding did not constitute irreparable injury); Renegotiation Board v. Bannercraft Clothing Co., 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.").

[9] Moreover, we also hold that Triangle has not preserved the issue, having failed to fairly present a collateral estoppel or res judicata issue to the district court or to this Court.

19

Fourth Step:  Judicial Exceptions

As we discussed above, there are three established judicial exceptions to the Norris-LaGuardia Act, under which judges may compel arbitration[10], enjoin strikes undertaken in violation of an obligation to arbitrate[11], and enforce duties imposed by other labor statutes.[12]  Triangle concedes that neither the Supreme Court nor any of the circuit courts has held that there is an exception to the Norris-LaGuardia Act under which a court has jurisdiction to enjoin or stay arbitration proceedings.  The company contends, however, that we should imply an exception from the principles underlying the foregoing judicial exceptions.

First, the company notes that the Supreme Court in Lincoln Mills held that the Norris-LaGuardia Act did not preclude the issuance of an injunction to compel arbitration in a case growing out of a labor dispute.   The company argues that there is no principled distinction between an action to compel arbitration and an action to enjoin arbitration.  Every circuit which has addressed this argument has rejected it. Broadband, 317 F.3d at 761-62 (7th Cir.); Tejidos, 22 F.3d at 12 (1st Cir.); Camping, 915 F.2d at 1343-44 (9th Cir.); District No. 1, 723 F.2d at 77 (D.C. Cir); see also

---

[10]      See Lincoln Mills, 353 U.S. at 457-59, 77 S.Ct. at 918-19.

[11]      See Boys Markets, 398 U.S. at 252-54, 90 S.Ct. at 1593-94;  Buffalo Forge, 428 U.S. at 407-12, 96 S.Ct. at 3147-50.

[12]      See, e.g., Brotherhood of R.R. Trainmen, 353 U.S. at 39-41, 77 S.Ct. at 640-41.

20

Lukens, 989 F.2d at 678-79 (3d Cir.) (emphasizing the distinction between compelling arbitration and enjoining arbitration). We agree with our sister circuits that the exception carved out by the Supreme Court in Lincoln Mills was driven by the strong congressional policy favoring the settlement of labor disputes by voluntary arbitration. We note that, pursuant to Section 8 of the Act, even the limited injunctive relief permitted under the Act is available only after the parties have exhausted arbitration remedies. Lincoln Mills, which permitted a court to compel arbitration, fosters the congressional policy favoring arbitration; in contrast, the instant injunction enjoins arbitration and thus is in tension with that policy. We agree with the Seventh Circuit that such an anti-arbitration injunction "has no purchase in the Norris-LaGuardia Act." Id. at 762.

Triangle relies heavily on AT&T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). In that case, the union claimed that a layoff was a violation of the CBA, one provision of which set out the order in which employees were to be selected for layoffs "when lack of work necessitates Layoff." Id. at 1416. The union filed suit to compel arbitration, arguing that this clause was implicated because there was no "lack of work necessitat[ing] Layoff." The district court compelled the company to arbitrate. The Seventh Circuit understood the district court to have ordered arbitration of the

21

question of arbitrability, and affirmed. The Supreme Court reversed, holding that arbitrability was a question for the court, not the arbitrator. In doing so, the Court stated that, "[t]he duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." Id. at 1419 (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546-47, 84 S.Ct. 909, 912-13, 11 L.Ed.2d 898 (1964)). It is from this language that Triangle extrapolates that the district court in the instant case had jurisdiction to stay arbitration. Specifically, Triangle contends that AT&T Technologies necessarily implied an exception to the Norris-LaGuardia Act under which the court had jurisdiction to issue an injunction for purposes of guaranteeing pre-arbitration judicial determination of the arbitrability of the dispute between Triangle and OVILU.

We join the First, Third, and Seventh Circuits in rejecting Triangle's reading of AT&T Technologies.[13] We agree with our sister circuits that AT&T Technologies is distinguishable and does not govern this case. AT&T

---

[13]    Tejidos, 22 F.3d at 12 (1st Cir.); Lukens, 989 F.2d at 678-79 (3d Cir.); Broadband, 317 F.3d at 761 (7th Cir.); see also Camping, 915 F2d at 1347-48 (9th Cir.) (rejecting the company's argument that an exception should be carved out to permit enjoining arbitration when the issue to be decided is the existence or enforceability of any obligation to arbitrate, and holding that the reluctant party to the arbitration could challenge the arbitrator's decision later, thus retaining its right to a later judicial determination of arbitrability); The Developing Labor Law, 550 (Peter A. Janus, et al., eds., 2004) (describing these four cases and District No. 1,723 F.2d 70 (D.C. Cir.) as having held "that the Norris-LaGuardia Act precludes injunctive relief prohibiting the arbitration of a labor dispute").

22

Technologies did not involve an attempt to enjoin arbitration; it did not even address the applicability of the Norris-LaGuardia Act. As the other circuits have pointed out, Triangle's reading of AT&T Technologies is at war with the text of the Act (particularly Section 8) and the Act's history.

Triangle's position was most recently rejected by the 7th Circuit in Broadband. In Broadband, the union claimed that the company had failed to bargain in good faith with several bargaining units. The union demanded arbitration. The company argued that under the contract, this type of dispute was to be mediated, rather than arbitrated, and sought an injunction staying the arbitration proceedings. The district court denied the motion, and the company appealed. After concluding that litigation grew out of or involved a labor dispute, Judge Easterbrook explained why AT&T Technologies did not control.

> [The company's argument] starts from the holding of AT&T Technologies, Inc. v. Communications Workers, that, unless the parties agree otherwise, arbitrability is a question for a judge to decide. [The company] reads AT&T Technologies as establishing that this decision must precede the arbitration; and if it has a substantive right to a judicial decision then the Norris-LaGuardia Act must be read to accommodate that right . . . .
>
> One response to this theme is that it proves too much and would, if accepted, wipe out the core of the Norris-LaGuardia Act. The linchpin of [the company's] argument is that if the employer has a substantive right (here, to a judicial decision about arbitrability) then there must be a remedy by way of injunction. . . .

23

What Congress established through the Norris-LaGuardia Act is that a substantive right does not imply an injunctive remedy. . . .

Nothing in AT&T Technologies is to the contrary. No one sought an anti-arbitration injunction in that case. It began instead when the union invoked the court's assistance to oblige a reluctant AT&T to arbitrate a dispute. Because the relief sought [in AT&T Technologies] was an order compelling the other party to arbitrate, of course the district judge's decision preceded the arbitration; that's what the structure of the suit entailed. John Wiley & Sons, Inc. v. Livingston was in an identical posture. That the opinions in both of these cases say that a decision about arbitrability precedes the arbitration does not imply that this is the only proper sequence; it was just the right sequence for the kind of dispute that arose in those two cases. When arbitration can proceed with only one side's cooperation, by contrast, the timing issue comes to the fore, and with it the question whether pre-arbitration judicial review is essential to avoid irreparable injury. The answer is no . . . , which means that [the company] has no colorable argument for an extension of the Boys Markets principle to cover anti-arbitration injunctions, as opposed to injunctions that facilitate dispute resolution through arbitration.

Broadband, 317 F.3d at 761-63 (7th Cir.) (emphasis in original) (citations omitted).

Triangle's position has fared no better in the Third Circuit. In Lukens, a union went on strike after its CBA expired and the two sides were unable to reach a new agreement. The employer and union subsequently reached an agreement that provided for binding arbitration of disputes. The union, alleging that the company violated the new agreement when it failed to recall certain employees, commenced arbitration. The company contended that the bargaining history of the parties

24

clearly demonstrated that the parties had intended to exclude the subject of striker recall from arbitration. The company filed suit, "seeking a judicial determination that the subject matter of the dispute was not arbitrable." Lukens, 989 F.2d at 671 (3d Cir.). The company requested that the arbitrator delay the hearing until the court ruled, but the arbitrator declined and the arbitration proceedings went forward. The district court issued a temporary restraining order enjoining the arbitration and prohibiting the arbitrator from issuing an award. The district court then held a preliminary injunction hearing, at which it concluded that the dispute was, indeed, arbitrable. However, because the district court found that the company's "challenge to arbitrability was a good faith assertion of its rights under AT&T Technologies, Inc. v. Communications Workers of America," it ordered that the initial arbitration was ineffectual, and that the dispute be re-arbitrated before a different arbitrator. Id. at 672. The union appealed the injunctive order and the company cross-appealed the declaratory order.

Although the Third Circuit analyzed and decided the issue of arbitrability in its discussion of the order for declaratory relief -- i.e. its review of the "final judgment and decree in which the [district] court concluded that the dispute was arbitrable" (Id. at 672) -- this analysis does not bear on the jurisdictional issue raised in the instant case. In the context of a final declaratory order, the Norris-

25

LaGuardia Act's limitations on jurisdiction to issue injunctions are inapplicable. We have no such final declaratory judgment order before us in the instant case.

Turning to the issue raised in the instant appeal, the Third Circuit next considered whether or not the district court lacked jurisdiction to order injunctive relief under the Norris-LaGuardia Act, analyzing the scope of the Act generally and the relevance of AT&T Technologies, in particular. In doing so, the court considered and rejected Triangle's position in the instant case.

> [The company] argues that the Supreme Court's AT & T opinion mandates that any arbitration proceeding be enjoined until a determination as to arbitrability is made. If such were the case, it might follow that an exception to the [Act] would be required for that limited purpose. We therefore must consider the holding in AT & T.
>
> A review of the decision in AT & T leads us to conclude that, in that case, the Supreme Court merely restated its long held position that arbitration will not be compelled by a federal court unless a prior determination as to arbitrability is made by the court (or unless the parties expressly provide that the determination as to arbitrability may be made by the arbitrator). Our review of the AT & T decision reveals that the Supreme Court did not expand on its prior holdings and did not state or imply that an arbitration proceeding should be enjoined until a determination as to arbitrability is made.

Id. at 678-79 (citations omitted) (emphasis in original).[14]

_____

[14]    In a footnote, the Third Circuit aptly noted that if a party to an arbitration believes that the dispute is not arbitrable, it can easily preserve this objection for purposes of obtaining judicial review afterwards:

> We note that to preserve an objection to arbitrability, a party need only state his or her objection on the record at the arbitration. The party may then proceed with the arbitration and raise the objection at a later date in an enforcement proceeding.

We turn next to the First Circuit's decision in <u>Tejidos de Coamo v. Int'l</u>

<u>Ladies Garment Workers Union</u>, 22 F.3d 8 (1st Cir. 1994).  Unlike <u>Broadband</u> and

<u>Lukens</u>, which each involved an employer who acknowledged the existence of a

binding CBA and contested its scope, the employer in <u>Tejidos</u> argued that it had

not entered into any binding agreement at all.  Nonetheless, the First Circuit

reached the same outcome for the same reasons.[15]

In <u>Tejidos</u>, the company and the union negotiated a "summary of agreement"

after their previous CBA had expired.  Later, following a strike, the company

disciplined certain employees for strike and picket-line misconduct.  The union

<u>Lukens</u>, 989 F.2d at 679 n.11 (3d Cir.).

[15]     Indeed, the ban on anti-arbitration injunctions is more clearly applicable to the instant case than to <u>Broadband</u>, <u>Lukens</u> or <u>Tejidos</u>; we doubt that any of Triangle's defenses can be correctly characterized as a substantive challenge to the arbitrability of the underlying dispute.  On appeal, Triangle focuses its attention on OVILU's alleged failure to pursue its grievance in strict accordance with the procedures outlined in the CBA. Triangle also suggests that the arbitration was occurring pursuant to a separate and independent agreement to arbitrate reached during the NLRB proceedings, and not pursuant to the CBA, and that Triangle had withdrawn its consent to that arbitration agreement prior to the date the union invoked the American Arbitration Association proceedings.  Although all of the foregoing is hotly disputed by the union, of greater significance at this stage is that such defenses, whatever their merit, strike us as the type of procedural matters discussed in <u>Wiley</u>, in which the Supreme Court held that "[o]nce it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, the 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." 376 U.S. at 557, 84 S.Ct. at 918.  <u>See also</u>, Moses H. Cone, 460 U.S. at 24-25, 103 S.Ct. at 941 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."); <u>Howsam</u>, 537 U.S. at 84-85, 123 S.Ct. at 592 (2002), <u>Klay</u>, 376 F.3d at 1109-1110.  In light of our disposition of the case, we need not definitively so decide.

sought to arbitrate. The company claimed that the summary of agreement was not a contract and, pointing to the expiration of the CBA, claimed that it was no longer under an obligation to arbitrate disputes.

The company sued in federal court, seeking injunction of the arbitration and a declaratory judgment that no contract existed. A magistrate judge denied the injunction and the arbitration went forward. The arbitrator issued a decision finding that a contract currently existed and scheduled hearings to determine whether or not the contract was breached. On appeal from the magistrate judge's decision, the district court issued a stay pendente lite of arbitration proceedings regarding all disputes arising after the previous contract had expired. The union appealed.

After reviewing Section 7's various requirements and the narrow judicial exceptions to the Act (including the exception under which a district court may compel the parties to arbitrate), the First Circuit, like the Seventh and the Third, rejected the contention that the judicial determination of arbitrability must precede the arbitration itself, finding instead that although the district court had jurisdiction to grant declaratory relief, it did not have jurisdiction to enjoin the arbitration pending its resolution of the declaratory claim. The Tejidos court distinguished ATT Technologies as follows:

28

> [I]n AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the Supreme Court held that a court cannot order arbitration without a judicial finding that there is an agreement providing for it.
>
> But AT & T Technologies, although heavily stressed by the Company, does not directly govern our case. Here the arbitration clause invoked by the Unions does not require a court order: an arbitrator being already designated under the alleged contract--that is, the prior contract that the Unions claim to have been extended--the Unions could begin the process without cooperation from the Company or aid from the courts. It is the Company that has taken the offensive and sought to preempt the arbitration. Nothing in AT & T Technologies addresses the question whether section 7 applies to injunctive relief when an employer seeks to preempt arbitration.

Tejidos, 22 F.3d at 12 (1st Cir.).[16] Rejecting as well the company's other arguments in support of the anti-arbitration injunction, the First Circuit held that the Norris-LaGuardia Act applied and forbade the injunction of the arbitration proceedings. The court noted, however, that the district court's jurisdiction over the declaratory claim remained intact.[17]

---

[16] With regard to the harm that might be caused by an adverse arbitration award, Tejidos noted that "[i]f the concern is with relief that the arbitrator might order, the short answer is that the award is not self-executing. A valid objection to jurisdiction would be presented to and decided by the court before the award was implemented." 22 F.3d at 14 (1st Cir.).

[17] Specifically, Tejidos states:

This case is not over. The Company's complaint sought a declaration that there was no collective bargaining agreement in force after February 29, 1992, and so no obligation to arbitrate disputes arising after that date. . . . [S]ection 7 [does not] pose any barrier to such a declaration; it is directed only against injunctions.

Id. at 15.

We agree with our sister circuits. The limited judicial exceptions crafted in large part to effectuate Congress' strong preference for labor arbitration do not apply when a party asks for injunctive relief in order to avoid arbitration. In such a case, the Norris-LaGuardia Act applies and a district court has no jurisdiction to issue such an injunction except pursuant to a statutory exception.[18]

## III. CONCLUSION

For the foregoing reasons, it is clear to us that the district court had no subject matter jurisdiction to enjoin the arbitration proceeding, thus rendering the injunction a nullity. We VACATE the district court's order and REMAND for any further proceedings not inconsistent with this opinion.

**VACATED and REMANDED.**

---

[18] Nothing in our discussion of this case should be construed to mean that a court may not address questions of arbitrability prior to arbitration proceedings, or while those proceedings are ongoing. We only hold that where the dispute is one otherwise falling within the scope of the Act and ineligible for a statutory exception, a court has no jurisdiction to stay the arbitration while it considers any arbitrability questions issues raised by the parties. See Tejidos, 22 F.3d at 15 (1st Cir.).