**FIEND, INC., Plaintiff,**

v.

**INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES; Local 161, IATSE, Local 477, IATSE, Local 600, IATSE; and Local 798 IATSE, Defendants.**

Civil No. 11–02914 (MJD/AJB).

United States District Court, D. Minnesota.

Dec. 5, 2011.

Barry A. O'Neil, Nicholas A. Dolejsi,
Lommen, Abdo, Cole, King & Stageberg,

P.A., Minneapolis, MN, for Plaintiff Fiend, Inc.

Brendan D. Cummins, Justin D. Cummins, Miller O'Brien Cummins, PLLP, Minneapolis, MN, for Defendants International Alliance of Theatrical Stage Employees, et al.

## ORDER ON PLAINTIFF'S MOTION TO STAY ARBITRATION

ARTHUR J. BOYLAN, United States Chief Magistrate Judge.

### INTRODUCTION

This matter is before the Court, United States Chief Magistrate Judge Arthur J. Boylan, on Plaintiffs Motion to Stay Arbitration. [Docket No. 2.] A hearing was held on the motion on November 18, 2011 at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415. Barry A. O'Neil appeared on behalf of Plaintiff. Brendan D. Cummins appeared on behalf of Defendants. For the reasons discussed below, Plaintiff's motion to stay is denied.

### BACKGROUND

Plaintiff Fiend, Inc. ("Fiend") is a Minnesota corporation engaged in film and video production. (Docket No. 1, Compl. ¶ 2.) Defendant International Alliance of Theatrical Stage Employees ("IATSE") is a labor organization that represents workers in the entertainment industry. (Docket No. 15, Defs. Mem. 2.) Defendants IATSE Locals 161, 477, 600, and 798 (together with the IATSE, the "Unions") are local labor organizations of the IATSE. (Id.)

The dispute between the parties arose on March 25, 2011, when Fiend was shooting a commercial in Orlando, Florida. (See Docket No. 1, Compl. ¶ 16.) Two representatives of IATSE local unions came to the commercial production site and sought to have Fiend become a signatory to IATSE's collective bargaining agreement. (See id.) Ultimately, John Malina, who Fiend engaged as a producer for the March 25, 2011 commercial shoot, signed the documents presented to him by the union representatives that day. (Docket No. 13, Affidavit of John Malina, ¶ 13.)

The parties dispute whether the documents signed by Malina on March 25, 2011 constitute a valid and binding collective bargaining agreement to which Fiend thereby became a signatory. Fiend alleges that Malina had no authority to enter into any agreements on its behalf and that it informed the union representatives on March 25, 2011 that Malina had no authority to bind Fiend. (Docket No. 9, Pl. Mem. 4.) Fiend also contends that the documents signed by Malina were incomplete, not counter-signed, incorrectly identified Malina as an owner and officer of Fiend, and were missing necessary and material terms. (Docket No. 9, Pl. Mem. 6.) Fiend further alleges that Malina's signature was obtained through intimidation and coercion. (Docket No. 1, Compl. ¶ 15.) Fiend therefore contends that there is no enforceable agreement between it and the Unions. (Id. at ¶ 26.) On March 28, 2011, Fiend's counsel sent a letter to the IATSE, stating that Fiend rejected any agreements with IATSE and that to the extent the proposed agreements were an offer, Fiend terminated the offer. (Docket No. 11–1, Affidavit of Joe Schaak Ex. 1.)

The Unions contend that Malina did have authority to bind Fiend and that Malina voluntarily signed all the documents necessary for Fiend to enter into a collective bargaining agreement with the Unions on March 25, 2011. (Docket No. 15, Defs. Mem. 5.) The Unions have since sought to enforce the terms of the collective bargaining agreement against Fiend. On May 25, 2011, the Unions filed a Grievance and Demand for Arbitration before the Ameri-

can Arbitration Association ("the AAA arbitration"), asserting that IATSE crew members who worked at the March 25, 2011 commercial shoot were not paid in accordance with "the parties['] collective bargaining agreement." (Docket No. 10–1, Affidavit of Nick A. Dolejsi, Ex. B.) Fiend's counsel sent a letter to the Unions' counsel in response to the arbitration demand, which stated that "no agreement exists between the parties" and that Fiend did "not intend to appear or participate in arbitration absent an order compelling its participation . . ." (*Id.* at Ex. C.)

On September 20, 2011, the Unions filed an unfair labor practices charge with the National Labor Relations Board ("NLRB"), alleging that Fiend had repudiated its collective bargaining agreement with the Unions. (Docket No. 17–3, Affidavit of Rusty Burrell, Ex. 3.)

Fiend filed this lawsuit on October 3, 2011 under § 301 of the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 185, seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 that it did not become a party to an enforceable collective bargaining agreement with the Unions. (*See* Docket No. 1, Compl. ¶ 8, Request for Relief.) Fiend now seeks an order of this Court staying the AAA arbitration pending a determination by this Court on the merits of Fiend's declaratory judgment action. (Docket No. 2.)

## DISCUSSION

### I. A STAY OF ARBITRATION IS IMPERMISSIBLE UNDER THE NORRIS–LAGUARDIA ACT.

■ Federal courts generally do not have jurisdiction to issue injunctions in matters involving or growing out of a labor dispute. *See* 29 U.S.C. § 101. The Norris–LaGuardia Act, 29 U.S.C. § 101, provides:

No court of the United States . . . shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

The Act provides that strict requirements must be met before an injunction may be issued, including an evidentiary hearing, specified findings by the court, and certain other steps, including posting a bond. *See* 29 U.S.C. § 107. The required findings by the court include that "unlawful acts have been threatened and will be committed," that absent an injunction, "substantial and irreparable injury to complainant's property will follow," and that public officers "are unable or unwilling to furnish adequate protection." *Id.*

■ Fiend argues that § 301 of the LMRA provides the Court with jurisdiction to order a stay of arbitration proceedings conducted pursuant to a collective bargaining agreement, notwithstanding the Norris–LaGuardia Act. (Docket No. 9, Pl. Mem. 9–10.) Section 301 grants the district court jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). However, six courts of appeals have ruled that the Norris–LaGuardia Act divests the court of jurisdiction to enjoin arbitration of a labor dispute in § 301 cases unless the requirements of the Act are met. *See Triangle Constr. & Maint. Corp. v. Our Virgin Islands Labor Union,* 425 F.3d 938, 940 (11th Cir.2005); *AT & T Broadband, LLC v. Int'l Bhd. of Elec. Workers Local 21,* 317 F.3d 758, 759–63 (7th Cir.2003); *Tejidos de Coamo, Inc. v. Int'l Ladies' Garment Workers' Union,* 22 F.3d 8, 11–13 (1st Cir.1994); *Lukens Steel Co. v. United Steelworkers Local 1165,* 989 F.2d 668, 676–79 (3d Cir.1993); *Camping*

Constr. Co. v. District Council of Iron Workers Local 378, 915 F.2d 1333, 1340–50 (9th Cir.1990); In re District No. 1–Pacific Coast Dist., Marine Engineers' Beneficial Ass'n, 723 F.2d 70, 77 (D.C.Cir.1983). The Tejidos court reached this conclusion under facts similar to those here. In Tejidos, the employer argued that it had not entered into any binding collective bargaining agreement with the union at all, like Fiend argues here. See Tejidos, 22 F.3d at 9. Yet, the court still reached the same outcome that injunctive relief staying arbitration is barred under the Act. Id. at 11–13. This Court therefore reaches the same conclusion here.

### A. The Norris–LaGuardia Act Applies.

In its reply brief, Fiend argues that whether the parties entered into a valid and enforceable collective bargaining agreement is a "gateway issue" that must be resolved by the court in the affirmative before the Norris–LaGuardia Act applies to the dispute. (Docket No. 19, Pl. Reply Mem. 1.) In support of this assertion, Fiend cites Granite Rock Co. v. Int'l Bhd. of Teamsters, —— U.S. ——, ——, 130 S.Ct. 2847, 2857, 177 L.Ed.2d 567 (2010) for the propositions that whether a contract to arbitrate was formed is "generally for courts to decide" and arbitration is "strictly a matter of consent." (Docket No. 19, Pl. Reply Mem. 1–2.) However, adherence to these principles does not lead to the result that the Norris–LaGuardia Act is inapplicable to this case.

■ The Norris–LaGuardia Act applies to this dispute if it is a matter "involving or growing out of a labor dispute." 29 U.S.C. § 101. Numerous appellate courts have held that arbitration of a labor dispute is a matter "involving a labor dispute" within the meaning of the statute. See, e.g., Triangle Constr., 425 F.3d at 945–46; AT & T Broadband, 317 F.3d at 759–60;

Tejidos, 22 F.3d at 13; Lukens, 989 F.2d at 676; Camping Constr., 915 F.2d at 1343. This case law confirms that the present matter is a "labor dispute" subject to the Norris–LaGuardia Act.

Fiend's reliance on Granite Rock is inapplicable to the factual circumstances here. In Granite Rock, the Supreme Court decided that the court, rather than an arbitrator, must decide the question of whether the collective bargaining agreement at issue had been ratified. Granite Rock, 130 S.Ct. at 2863. In that case, the unions had moved the district court to compel the parties to arbitrate their dispute over the agreement's ratification and the issue was whether the district court should have compelled them to do so. Id. at 2855. Granite Rock did not involve an attempt to enjoin arbitration; it did not even address the applicability of the Norris–LaGuardia Act.

■ Here, the circumstances are markedly different. The Court is not being asked to compel the parties to arbitrate, but to issue an injunction preventing the arbitration from going forward. Although there is a specific judicial exception to the Norris–LaGuardia Act under which courts may compel arbitration (see Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 457–59, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)), courts have consistently rejected the argument that because a court may issue an order compelling arbitration in a § 301 case, it must also be able to enjoin an arbitration. Triangle Constr., 425 F.3d at 948; AT & T Broadband, 317 F.3d at 761–62; Tejidos, 22 F.3d at 12; Lukens, 989 F.2d at 678–79; Camping Constr., 915 F.2d at 1343–44; In re District No. 1, 723 F.2d at 77. This is because the "limited judicial exceptions [to the Norris–LaGuardia Act] crafted in large part to effectuate Congress' strong preference for labor arbitration do not apply when a party asks for

injunctive relief in order to avoid arbitration." *Triangle Constr.*, 425 F.3d at 952.

■ In addition, although it is true that disputes concerning contract formation are generally for courts to decide (*see Granite Rock*, 130 S.Ct. at 2855–56), the court's power to adjudicate substantive rights under § 301 does not alter the Norris–LaGuardia Act's requirements. *AT & T Broadband*, 317 F.3d at 761; *Tejidos*, 22 F.3d at 15; *Triangle Constr.*, 425 F.3d at 952; *Camping Constr.*, 915 F.2d at 1346. For example, in *Tejidos*, the court found that, although the district court had jurisdiction to grant declaratory relief on the issue of whether there was a collective bargaining agreement in force requiring disputes to be arbitrated, that determination need not precede the arbitration itself and the Norris–LaGuardia Act deprived the court of jurisdiction to stay the arbitration. *Tejidos*, 22 F.3d at 12–15. Similarly, the *Granite Rock* principles that Fiend relies on do not alter the result that the Norris–LaGuardia Act prohibits an injunction staying arbitration or mandate that the Court's determination on the merits precede arbitration.

**B. Fiend Has Not Met the Procedural or Substantive Requirements Necessary for an Injunction Under the Norris–LaGuardia Act.**

■ The Norris–LaGuardia Act provides that an injunction may not be issued unless certain procedures have been met. For example, a court may not issue an injunction except "after hearing the testimony of witnesses in open court (with opportunity for cross-examination)." 29 U.S.C. § 107. Fiend did not request that this Court hold an evidentiary hearing. Nor did it post a bond as the Act requires. *See* 29 U.S.C. § 107. Fiend has not met the procedural prerequisites under the Act.

Fiend also cannot meet the substantive requirements of the Act. Fiend must show, among other things, that it will suffer substantial and irreparable injury absent an injunction. 29 U.S.C. § 107. Fiend asserts that it will suffer irreparable harm because it will be required to participate in an arbitration hearing in Florida. (Docket No. 9, Pl. Mem. 14.) However, parties typically cannot show that participation in a labor arbitration would cause them irreparable harm because the expense of arbitration does not constitute irreparable injury. *See e.g., Triangle Constr.*, 425 F.3d at 947; *AT & T Broadband*, 317 F.3d at 762; *Tejidos*, 22 F.3d at 14–15. Nor is concern over relief that the arbitrator might order sufficient to constitute irreparable harm, because an arbitrator's award is not self-executing and is subject to review by the court. *Tejidos*, 22 F.3d at 14. For these reasons, Fiend has not shown that it will be caused irreparable harm simply by participating in the arbitration hearing.

## II. THE GARMON DOCTRINE DOES NOT PREEMPT THIS COURT'S JURISDICTION.

In addition to arguing that the Norris–LaGuardia Act deprives the Court of jurisdiction to issue an injunction against arbitration, the Unions also argue in opposing Fiend's motion that this Court lacks subject matter jurisdiction over Fiend's lawsuit pursuant to the *Garmon* preemption doctrine. (*See* Docket No. 15, Defs. Mem. 25–33.) The Court notes that the Unions have filed a Rule 12(b) motion to dismiss for lack of subject matter jurisdiction (*see* Docket No. 5), which has not yet been briefed by the parties or heard by the Court. Nevertheless, the Court will discuss the *Garmon* doctrine briefly to address the Unions' argument that the Court does not have jurisdiction over this action.

 *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) holds that state and federal courts must defer to the primary jurisdiction of the NLRB if a matter is arguably subject to § 7 or § 8 of the NLRA regarding unfair labor practices. *Garmon*, 359 U.S. 236, 244–45, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). The Unions acknowledge that the NLRB's primary jurisdiction does not preempt a court's jurisdiction over § 301 actions, even if the matter is arguably subject to § 7 or § 8 of the NLRA. *See Smith v. Evening News Ass'n*, 371 U.S. 195, 197, 83 S.Ct. 267, 9 L.Ed.2d 246 (1977). Yet, the Unions argue that concurrent jurisdiction is not appropriate here because the parties' dispute is over the existence of the collective bargaining agreement rather than its terms. (*See* Docket No. 15, Defs. Mem. 33.) However, "the *Garmon* doctrine is not relevant to actions within the purview of § 301." *William E. Arnold Co. v. Carpenters Dist. Council*, 417 U.S. 12, 16, 94 S.Ct. 2069, 40 L.Ed.2d 620 (1974). "A district court retains independent jurisdiction to decide a case properly brought under § 301, even if the claim may also constitute an unfair labor practice under the NLRA" and "the NLRB's jurisdiction is 'exclusive' only if there is no jurisdiction under § 301(a)." *Mack Trucks, Inc. v. Int'l Union, United Auto. Workers*, 856 F.2d 579, 585 (3rd Cir.1988).

Here, Fiend has been accused of violating the wage and benefits provisions of a collective bargaining agreement with the Unions and has invoked jurisdiction under § 301. The Unions have not contested § 301 jurisdiction and case law supports that this action falls under the purview of § 301. *See, e.g., J.W. Peters, Inc. v. Bridge Workers, Local Union I*, 398 F.3d 967, 973 (7th Cir.2005) (declaratory judgment plaintiff accused of violating a collective-bargaining agreement may ask court to declare the agreement invalid within purview of § 301). Accordingly, in the context of this motion to stay arbitration, the Court cannot conclude that the *Garmon* doctrine deprives it of jurisdiction over Fiend's claim.

Based on the foregoing, and all the files, records and proceedings herein, IT IS **HEREBY ORDERED** that Plaintiff's Motion to Stay [Docket No. 2] is **DENIED**.